IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| SAMMY L. WOODS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 05-2964-JTF-dkv |
| QUICKFUEL FLEET SERVICES, | ) |
| Defendant. | ) |

---

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

The plaintiff, Sammy L. Woods ("Woods"), proceeding *pro se*, filed a complaint on December 27, 2005, alleging the defendant, Quick Fuel Fleet Services ("Quick Fuel"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by discriminating against him on the basis of race. On October 29, 2007, Quick Fuel filed a motion for summary judgment. (D. E. 51.) Woods did not respond to the motion, and, on January 3, 2008, the court issued an order that, *inter alia*, denied Woods's motion to hold the case in abeyance pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501 *et seq.*, and directed Woods to respond to the summary-judgment motion by January 12, 2008.[1] (D.E. 55.) On January 24, 2008, Woods filed

---

[1] While D.E. 55 originally set the response deadline as January 12, 2008, the court has since amended that date. An

an amended motion to hold the case in abeyance, including a letter from his commanding officer stating that Woods would be unable to attend court for a period not to exceed four-hundred days from January 5, 2008. (D.E. 57.) On April 10, 2008, the court issued an order staying the action, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. app., § 501 *et seq.* (D.E. 62.) Because of the stay, the court denied Quick Fuel's motion for summary judgment without prejudice to its resubmission after the stay had been terminated. (D.E. 63.) On September 12, 2012, Woods submitted a motion requesting the court to reopen the case, (D.E. 86), which motion the court granted on February 11, 2013, (D.E. 88).

Before the court is the March 28, 2013 motion of Quick Fuel seeking summary judgment as to all claims in the complaint. (Def.'s Mot. for Summ. J., D.E. 91.) Woods filed a response to the motion. (Pl.'s Resp. Opp'n to Def.'s Mot. for Summ. J., D.E. 98.) On April 31, 2013, Quick Fuel filed a reply to Woods's response. (Def.'s Reply, D.E. 99.) This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Referral, D.E. 90.) For the reasons set forth below, it is recommended

---

amended order, correcting the typographical error in the response date, was entered on January 16, 2008. (D.E. 56.)

that Quick Fuel's motion for summary judgment be granted and that Woods's complaint be dismissed in full.

## I. PROPOSED FINDINGS OF FACT

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

In evaluating a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

Woods's response to the motion for summary judgment does not comply with the Federal Rules of Civil Procedure or with this court's local rules. Specifically, he has not complied with Local Rule 56.1(b), which provides that the opponent of a motion for summary judgment "must respond to each fact set forth by the movant" and "the response must be made on the document

---

[2] Even before the 2010 amendments to Rule 56, a court evaluating a summary judgment motion was not required to conduct an independent search of the record to determine whether there might be evidence to support a plaintiff's claims. *Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010)("The most that Buchanan may point to as far as rebutting evidence is a large package of evidence attached to her response to Wyeth's partial summary judgment motion regarding punitive damages. This evidence was not attached to her brief responding to Wyeth's merits argument, nor was it cross-referenced in that brief. Instead, Buchanan suggests that the fact that the evidence was in the record somewhere is sufficient to create a question of fact and survive summary judgment. This is simply incorrect. Even if the evidence to which Buchanan now refers was sufficient to rebut Wyeth's evidence of inadequate warning, it was Buchanan's job to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out."); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)("Importantly, '[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'")(quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 479–80 (6th Cir. 1989)); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)("Appellants' argument that the district court erred in not searching the record sua sponte is wholly without merit. The facts presented and designated by the moving party were the facts at hand to be dealt with by the trial court.").

provided by the movant or another document in which the [opponent] has reproduced the facts and citations verbatim as set forth by the movant." Either way, according to the Local Rule, "the [opponent] must make [its] response to each fact set forth by the movant immediately below each fact set forth by the movant." The court, therefore, adopts Quick Fuel's proposed factual findings to the extent they are properly supported by record evidence. FED. R. CIV. P. 56(e)(3).

For purposes of this summary-judgment motion, the court finds the following facts are undisputed:

Woods, a black truck driver, began working for Quick Fuel on June 30, 2003, when Quick Fuel acquired U.S. Fleet, Woods's employer at the time. John Bishop ("Bishop"), a white truck driver who also worked for U.S. Fleet at the time of acquisition, and Ricardo Hebron, a black truck driver, were also hired at the same time as Woods. When Woods and Bishop were originally hired by Quick Fuel, they received the same base pay of $14.00 per hour. Additionally, Woods received a commission rate of $0.050 for each gallon of fuel delivered, while Bishop received a lower commission rate of $0.048 for each gallon of fuel delivered.

On May 4, 2004, Woods called Ron Walker ("Walker"), his manager, and informed Walker that he would not make a delivery because he was "tired and would not be on a truck all night."

Later that evening, Woods left a message with the Dispatch Center that he had a medical emergency and had to leave work. Woods failed to contact Walker the following morning to make arrangements to cover his delivery route. As a result, some of Quick Fuel's customers did not receive their scheduled refueling on or about May 4, 2004. Consequently, Quick Fuel terminated Woods on May 5, 2004, for his failure to communicate his unavailability for work. At the time of Woods's termination, there were several prior reprimands in his personnel file, including for missing scheduled stops, running out of fuel, and receiving traffic tickets.

On May 14, 2004, Woods filed a claim with the Tennessee Department of Labor and Workforce Development ("TDOL"), and after Quick Fuel failed to file a response to Woods's claim, TDOL awarded Woods unemployment benefits. Woods also filed a charge with the Equal Employment Opportunity Commission ("EEOC") on the same day, alleging that Quick Fuel had discriminated against him on the basis of race both during his employment and in discharging him.

On February 11, 2005, while Woods's EEOC charge was pending, he was rehired at Quick Fuel by Kevin Mitchell ("Mitchell"), a new manager at the company. When Quick Fuel rehired Woods, the company did not pay him less than any white driver who was less senior than Woods because, at the time when

Woods was rehired, there were no white drivers at Quick Fuel's Memphis facility. On June 28, 2005, the EEOC attempted mediation of Woods's discrimination charge, but it was unsuccessful. The EEOC did not make a reasonable-cause finding within 180 days of the filing, and Woods requested a right-to-sue letter, which he received on September 30, 2005. Woods timely filed suit in this court on December 27, 2005.

On May 30, 2006, Woods was again terminated by Quick Fuel because reduction in business required the elimination of one full-time driver in the Memphis territory. On June 26, 2006, Woods filed a second discrimination charge with the EEOC, alleging that the second termination was retaliation for filing the first EEOC charge as well as his Title VII complaint in federal district court. On September 20, 2006, the EEOC attempted mediation between the parties relating to Woods's second EEOC charge, but it was also unsuccessful. The EEOC again did not make a reasonable-cause finding within 180 days of the filing of the second charge, and Woods requested a right-to-sue letter, which he received on February 23, 2007.

II. PROPOSED CONCLUSIONS OF LAW

A. <u>Summary Judgment Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the nonmoving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

8

one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B. <u>Race Discrimination</u>

Woods brings his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, stemming from his termination from Quick Fuel on May 5, 2004,[3] as well as other

---

[3] Quick Fuel terminated Woods a second time on May 30, 2006, allegedly in retaliation for filing an EEOC charge and the current suit in this court. Woods filed a second charge with the EEOC on June 26, 2006. Woods received a right-to-sue letter

9

incidents of race discrimination he claims to have experienced while working there. (Compl., D.E. 1 at 2-4.) Specifically, Woods alleges that Quick Fuel's discriminatory practices caused him to receive less pay and unfavorable job assignments and, ultimately, led to his termination. (*Id.*) When there is no direct evidence of racial discrimination shown, the claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later modified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a prima facie case of racial discrimination, a plaintiff is required to show that: (1) he is a member of a protected group; (2) he was subjected to an

---

for his second EEOC charge on February 23, 2007. Because Woods did not file suit within ninety days of that date, any potential claim stemming from that second discrimination charge is time barred. *See* 42 U.S.C. § 2000e-5(f)(1)(providing that once an individual receives an EEOC right-to-sue letter, any Title VII employment discrimination action must be brought "within ninety days of the giving of such notice"); *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 460 (6th Cir. 2001).

Although Woods did not make the argument, it is worth noting that there are circumstances where a plaintiff can attempt to resurrect a potentially time-barred charge by claiming that it was part of a continuing violation. The "continuing violation doctrine may serve to toll the statutory period within which to file a complaint with the EEOC." *Wade*, 259 F.3d at 460-61 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977); *Dixon v. Anderson*, 928 F.2d 212, 216-17 (6th Cir. 1991)). However, the continuing violation doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right-to-sue letter." *Id.* (citing *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, No. 97-5956, 1998 WL 786892, at *5 (6th Cir. 1998)). Therefore, Woods's second charge of discrimination is time barred.

adverse employment decision; (3) he was qualified for the position; and (4) similarly situated nonprotected employees were treated more favorably. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). Once the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). If the defendant successfully rebuts the plaintiff's assertions of discrimination, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reasons set forth by the defendant were pretextual, i.e., fabricated for the purpose of concealing an unlawful motive. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391–92 (6th Cir. 2008). The ultimate burden of persuasion, however, never shifts from the plaintiff. *Id.* at 392.

Quick Fuel challenges only one of the four elements of Woods's prima facie case: that he was treated differently from other similarly situated employees outside his protected class. As to that, the fourth element, Woods alleges that Quick Fuel treated another employee, Bishop, more favorably than Woods by paying Bishop a higher commission and assigning Bishop to preferable shifts.[4] (Pl.'s Resp. Opp'n to Def.'s Mot. for Summ.

---

[4] Woods also alleges, in conclusory fashion, that white drivers in general were given preferable treatment. Woods

11

J., D.E. 98 at 6.) Specifically, Woods asserts that Bishop "got paid a higher commission than [Woods]," despite being less qualified than Woods, and that Woods "was placed on the even[ing] shift, while Bishop worked mornings." (*Id.*)

To be considered "similarly situated," individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)("The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."). Among the differentiating and/or mitigating circumstances that may establish that two employees are not similarly situated are "differences in job title and responsibilities, experience, and disciplinary history."

---

alleges that there were white drivers employed by Quick Fuel who "called in unable to finish their routes and were not terminated." (Compl., D.E. 1 at 3.) Additionally, Woods alleges that "[a] white [t]ruck [driver] had several customer[] complaints filed against him and he was not discharged." (Pl.'s Separate Statement of Disputed Factual Material, D.E. 97 at 3-4.) Woods has failed to come forward with any evidence supporting these allegations, and, as such, the court will disregard the allegations for present purposes because "[m]ere conclusory allegations of discrimination are insufficient to state a claim under Title VII." *Lee v. United States Postal Serv.*, 12 F. App'x 322, 323 (6th Cir. 2001)(citing *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 413 (6th Cir. 1999)).

*Campbell v. Hamilton Cnty.*, 23 F. App'x 318, 325 (6th Cir. 2001). There need not be an "exact correlation" between the plaintiff and the individual treated more favorably; rather, the two "must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)(internal quotation marks omitted)(emphasis in original).

Woods compares his employment at Quick Fuel with Bishop's, presumably submitting that Bishop is a proper comparator because he worked the same job as Bishop as a truck driver and reported to the same supervisors. (*See* Pl.'s Resp. Opp'n to Def.'s Mot. for Summ. J., D.E. 98 at 6.) Quick Fuel counters that, unlike Bishop, Woods "had several reprimands in his personnel file for poor job performance, including missing scheduled stops, running out of fuel, and receiving traffic tickets, which impaired his ability to drive as a commercial truck driver for Quick Fuel." (*See* Def.'s Reply, D.E. 99-2 at 8.) Indeed, there is no evidence that Woods and Bishop are similarly situated in relevant aspects. Although Woods has shown some degree of similarity between himself and Bishop, he has failed to show *relevant* similarity, such as with respect to the type of conduct that triggered Woods's termination and whether Bishop, like Woods, had a history of reprimands for poor job performance, *cf. Campbell v. Hamilton Cnty.*, 23 F. App'x 318, 326 (6th Cir.

13

2001)(finding that another employee was not similarly situated to the plaintiff due to differing respective disciplinary histories).

Even assuming *arguendo* that Bishop was similarly situated to Woods, there is no evidence that he was treated more favorably than Woods. To the contrary, Quick Fuel offers unrefuted proof that, if anything, Bishop was treated *less* favorably than Woods.[5] Woods and Bishop both received a base pay of $14.00 per hour during their employment with Quick Fuel. In addition, Woods received a commission rate of $0.050 for each gallon of fuel delivered, while Bishop received a lower commission rate of $0.048 for each gallon fuel delivered.

---

[5] For instance, on the matter of pay, Woods offers something short of a refutation: "The defendant cannot dispute that they have not produced any documents in this case to prove plaintiff was untruthful about his commission, being less that John Bishop." (Pl.'s Resp. Opp'n to Def.'s Mot. for Summ. J., D.E. 98 at 3.). To the extent that Woods is attempting to dispute Quick Fuel's assertion that Woods was paid a higher commission than Bishop, he has not established any *genuine* dispute of that fact. As support for his assertion, Woods relies on his own affidavit and two exhibits that were part of his first EEOC complaint. (*See id.*) Woods's affidavit provides the following: "At my hired [sic] date in March 2002, I only received a commission of .04 per gallon pumped. At John Bishop[']s hiring [sic] date[,] his commission was .048 per gallon pumped." (Ex. 1 to Pl.'s Resp. Opp'n to Def.'s Mot. for Summ. J., D.E. 98-1 ¶¶ 17-18.) Indeed, the two exhibits referenced by Woods confirm these commission figures. (*See* Exs. 19-20 to Pl.'s Resp. Opp'n to Def.'s Mot. for Summ. J., D.E. 98-19, 98-20.) However, these commission figures are from Woods's and Bishop's employment with U.S. Fleet, the company acquired by Quick Fuel. U.S. Fleet is not a party to this suit. Therefore, Woods has failed to dispute Quick Fuel's assertion that Woods's commission rate at Quick Fuel was actually higher than Bishop's.

14

Even were the court to assume, for the sake of argument, that Woods has set forth a prima facie case of race discrimination, Quick Fuel has offered a legitimate, nondiscriminatory reason for terminating him, i.e., that Woods failed to properly communicate with Quick Fuel regarding his unavailability for work. (Mem. Supp. of Def.'s Mot. for Summ. J., D.E. 91-2 at 4.)

The burden now shifts back to Woods to show pretext. In the Sixth Circuit, a plaintiff may establish pretext in any of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the adverse action; or (3) by showing that the proffered reason was insufficient to motivate the action. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). The question is whether the plaintiff has produced sufficient evidence from which a jury could reasonably doubt the defendant's explanation. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The plaintiff's burden to show pretext cannot be satisfied by conclusory statements and subjective beliefs. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

In his response to the motion for summary judgment, Woods insists that he contacted dispatch and his supervisor on May 4, 2004, and notified them of a family emergency. (Pl.'s Resp. to

Def.'s Mot. for Summ. J., D.E. 98 at 6.)  In essence, Woods's argument is that Quick Fuel's proffered reasons must not be believed because, under the first ground for proving pretext, they had no basis in fact.  When relying on that method for proving pretext, a plaintiff "must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Rather, the plaintiff must "put forth 'evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false.'" *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007)(quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 570 F.3d 614 (6th Cir. 2009)).

Woods states that the night before his missed shift he contacted Quick Fuel about a family emergency.  Specifically, he insists that "Defendant Quick Fuel-Fleet Services cannot dispute that on May 4, 2004, plaintiff contacted dispatch[] and supervisor after several attempts and notified them of a family emergency."  (Pl.'s Resp. to Def.'s Mot. for Summ. J., D.E. 98 at 6.)  The evidence is unrefuted, however, that Quick Fuel

never received notification that Woods would miss deliveries the following day.[6]

The evidence suggests that Quick Fuel reasonably relied on particularized facts in firing Woods. There is considerable basis in the evidence for accepting Quick Fuel's explanation for its decision to terminate Woods. Woods has not rebutted that evidence by showing, for example, that, in discharging Woods, Quick Fuel, "made an error too obvious to be unintentional," see *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). In sum, Woods has not put forth sufficient evidence for a jury reasonably to conclude that Woods had properly communicated with the company regarding his absence from work. Accordingly, this court recommends that summary judgment be granted.

### III. RECOMMENDATION

---

[6] In addition to the fact that Woods's statement fails on the basis of form to properly dispute Quick Fuel's assertion, his statement is also not sufficiently supported by evidence. As support for his assertion, Woods relies on his own affidavit. (*See id.*) Woods's affidavit provides the following: "On May 4, 2004, I reported to work and a few hours later and [sic] a family emergency occurred. I had to take my wife to the hospital. I did contact the dispatch officer and my supervisor Ron Walker and stated that []I had a family emergency, and that I'm going to have to end my shift early.[] My manager Ron Walker said 'ok{'] to my emergency and said 'just see me in the morning before your route starts on May 5th.'" (Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., D.E. 98 ¶ 14.) Woods's own affidavit, however, is insufficient to genuinely dispute Quick Fuel's assertion that Woods did not communicate his availability for work. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990)(stating that the party opposing summary judgment "must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts").

For the foregoing reasons, it is recommended that Quick Fuel's motion for summary judgment be granted and that Woods's complaint be dismissed in full.

Respectfully submitted this 21st day of June, 2013.

S/ Diane K. Vescovo  
Diane K. Vescovo  
United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.